UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x

IBF COLLATERALIZED FINANCE
CORPORATION, as successor in interest to
IBF SPECIAL PURPOSE CORPORATION II,

              Plaintiff,        :

            -against-        :

EDWARD T. STEIN,

              Defendant.      :

------------------------------------------------------x

Docket No.

**CV 02 5693**

COMPLAINT

GERSHON, J.

GO, M.J.

Plaintiff, by its attorneys Kurzman Eisenberg Corbin Lever & Goodman LLP, complains of the Defendant and alleges:

### JURISDICTION

1.    Subject matter jurisdiction of this Court over this action is predicated on diversity of citizenship, pursuant to 28 U.S.C. §1332(a), as between citizens of different states.

2.    The amount in controversy exceeds $75,000, exclusive of interest and costs.

### PARTIES

3.    At all relevant times, Plaintiff was, and is, a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in the District of Columbia, presently operating as a Debtor In Possession under the United States Bankrutpcy Code, and is the successor in interest by merger to IBF Special Purpose Corporation II ("IBF").

4.    At all relevant times, IBF was a corporation organized and existing under the laws



of the State of Delaware, with its principal place of business in the District of Columbia, engaged in the business of extending financing to commercial borrowers for the purpose of acquiring or carrying on business or investment activity.

5.      Upon information and belief, at all times hereinafter mentioned, Defendant Edward T. Stein ("Stein") was, and is, a resident of the State and Eastern District of New York.

CLAIM

6.      On or about August 20, 1998, IBF and Detour Magazine, Inc. ("Detour") entered into a Loan Agreement (Exhibit "A") which provides in pertinent part that:

      A.     IBF would lend Detour the sum of Five Hundred Fifty Thousand ($550,000) Dollars;

      B.     Detour would pay IBF (i) from the loan proceeds, a commitment fee of Twenty Five Thousand ($25,000) Dollars and (ii) on the due date of the loan, an "exit fee" of Fifty Thousand ($50,000) Dollars; and

      C.     Detour would pay from the loan proceeds a separate commission of Twenty Five Thousand ($25,000) Dollars to a non-party.

7.      Also on or about August 20, 1998, contemporaneously with the execution and delivery of the Loan Agreement, Detour made and delivered the Note (Exhibit "B") in favor of IBF. The Note provides in pertinent part that:

      A.     So long as Detour was not in default, the loan would bear interest at 18% annually;

      B.     Detour would pay interest currently on a monthly basis until November 20, 1998, when Detour would repay the entire loan principal balance together

with all accrued and unpaid interest thereon;

C.    In the event Detour defaulted in repayment of principal or interest, that interest after such default would accrue, and become due and owing, at the lesser of 10% above the non-default interest rate or the maximum interest rate permitted by law; and

D.    In the event the Note is delivered to an attorney for collection, Detour would be required to pay legal fees in an amount equal to 10% of the outstanding principal and interest.

8.     The Loan Agreement provides that Stein unconditionally guaranteed the obligations of Detour under the Note and Loan Agreement.

9.     On or about August 20, 1998, Stein executed a personal guarantee (Exhibit "C"; hereinafter "the Guarantee") of the Note and Loan Agreement.

10.    On or about August 20, 1998, Detour drew down the entire principal loan amount, of which it received Five Hundred Thousand ($500,000) Dollars, $25,000 was used to pay the commitment fee due under the Loan Agreement and $25,000 was used to pay the commission to a non-party.

11.    Detour defaulted on the Note and Loan Agreement, and made no payment of the principal or exit fee at any time on or prior to November 20, 1998.

12.    On or about December 28, 1998, IBF and Detour entered into a letter agreement (Exhibit "D"; hereinafter "the Loan Extension Agreement") by which IBF agreed to extend the due date of the loan to March 31, 1999 in consideration of Detour paying an extension fee of Five Thousand Five Hundred ($5,500) Dollars, reducing the principal loan balance by Twenty Seven

Thousand Five Hundred ($27,500) Dollars and bringing all interest payments current.

13.     Detour made the payments required of it by the Loan Extension Agreement (thereby reducing the principal loan balance to Five Hundred Twenty Two Thousand Five Hundred [$522,500] Dollars), and consequently IBF extended the loan due date to March 31, 1999.

14.     Detour again defaulted in payment of the principal and exit fee due on March 31, 1999.

15.     On or about May 21, 1999, IBF again agreed to extend the due date on the payment of the principal and exit fee until July 31, 1999, in consideration, *inter alia,* of certain payments made by Stein and credited to another loan guaranteed by Stein extended by one of IBF's affiliates.

16.     Detour again defaulted in payment of the principal and exit fee due on July 31, 1999.

17.     IBF executed on collateral securing the loan, and realized $50,483.48 therefor, which was credited to interest then due on the Note.

18.     By reason of the foregoing, on or about March 7, 2001, IBF commenced an action in this Court, docket no. CV 01 1357 (Gershon, USDJ) against Detour and Stein for payment of all principal, interest and legal fees due under the Loan Agreement and Note.

19.     IBF and Stein entered into a further agreement effective as of May 1, 2001 (hereinafter "the 2001 Forbearance Agreement"), which provided, *inter alia*, that IBF would further forbear for a period of one year (i.e. -- through May 1, 2002) from prosecuting its action on Stein's personal guarantee in consideration for certain minimum payments.

20.     Pursuant to the 2001 Forbearance Agreement, by Stipulation dated May 30, 2001, entered as an Order of the Court by the Hon. Nina Gershon, U.S.D.J. on or about September 7, 2001, IBF discontinued its initial action without prejudice, and any statutes of limitations were permanently tolled as and at the date the initial action was first filed.

21.     Subsequently, judgment was entered on confession against Detour in the States of New York, Colorado and California. The judgment remains unsatisfied.

22.     Stein made payments totaling $251,222.25 pursuant to the 2001 Forbearance Agreement, of which $178,013.63 was credited against outstanding interest bringing interest payments current through April 30, 2002, and $73,208.72 was credited against principal, leaving an unpaid balance of $395,850.19 due and owing under the Note, with interest thereon at the default rate from April 30, 2002.

23.     The 2001 Forbearance Agreement has expired, and the Note remains in default.

24.     By reason of the foregoing, there is presently due and owing from Stein to Plaintiff the sum of $395,850.19, plus interest at the default rate from April 30, 2002, plus reasonable attorneys' fees in an amount equal to 10% of the total principal and interest due at the time of judgment.

WHEREFORE Plaintiff IBF Collateralized Finance Corporation, as successor in interest to IBF Special Purpose Corporation III respectfully requests that judgment be entered against Defendant Edward T. Stein in the sum of $395,850.19, plus interest at the default rate from April 30, 2002, plus reasonable attorneys' fees in an amount equal to 10% of the total principal and interest due at the

time of judgment, the costs and disbursements of this action, and such other, further and different

relief as the Court deems just and proper.

Dated: New York, New York
       October 24, 2002

                                        KURZMAN EISENBERG CORBIN LEVER
                                        & GOODMAN, LLP

                                        By: _____
                                            Andrew J. Goodman (AG-3406)
                                            A Member of the Firm
                                            Attorneys for Plaintiff
                                            675 Third Avenue, Suite 1800
                                            New York, New York 10017
                                            (212) 661-2150

8/12/98

## LOAN AGREEMENT

LOAN AGREEMENT (the "Agreement") made as of this _20th_ day of August, 1998, between Detour Magazine, Inc., a Colorado corporation ("Borrower") having an office at 6855 Santa Monica Boulevard, Suite 400, Los Angeles, California 90038, and IBF Special Purpose Corporation II ("Lender"), a Delaware corporation having an office at 1733 Connecticut Avenue, Washington, D.C. 20009.

### WITNESSETH:

The Borrower desires to borrow and the Lender desires to lend to Borrower, for Borrower's use as working capital, the principal amount of Five Hundred Fifty Thousand Dollars ($550,000), pursuant to the terms of this Agreement.

NOW, THEREFORE, the parties hereto agree as follows:

### Article I
### The Loan

Section 1.01  Loan.  Lender agrees, upon the terms, and subject to the conditions hereof, to make a loan to the Borrower in the amount of $550,000 (the"Loan").  The Loan shall be evidenced by a Promissory Note of even date herewith in the face amount of $550,000 (the "Note").  The Loan shall bear interest on the unpaid principal balance thereof at the rate of 18% per annum.

Section 1.02.  Payments.  Interest only on the outstanding principal balance of the Loan shall be payable monthly in ADVANCE, with the first such payment, representing interest from the date hereof through and including August 31, 1998, due and payable on the date hereof and succeeding payments on the first day of each month thereafter.  The entire unpaid principal balance of the Loan, together with accrued and unpaid interest thereon, shall be due and payable on November _20th_, 1998 (the "Due Date"), provided, however, that at the sole discretion of Lender, the Due Date may be extended to no later than December ____, 1998.  All other terms of this Agreement and all other Loan documents (as hereinafter defined) shall remain in full force and effect in the event of any such extension of the due Date.

### Article II
### Representations and Covenants

Section 2.01  Representations.  The Borrower represents and warrants to the Lender that:

(a)   The Borrower is a corporation duly organized, validly existing and in good standing under the laws of its jurisdiction of incorporation;

(b)   The Borrower has all requisite power and authority and all necessary licenses and permits to own and operate its properties and to carry on its business as now conducted and as presently proposed to be conducted;

(c)   The Borrower has all requisite power and authority to execute, deliver and perform its obligations under this Agreement and all of the other documents (collectively, the "Loan Documents") executed in connection therewith.  The Loan Documents have been duly and validly authorized, executed and delivered by the Borrower and are valid and binding obligations of the Borrower, enforceable against the Borrower in accordance with their terms, except as the enforceability thereof may be limited by bankruptcy, insolvency, reorganization or other laws relating to or affecting the rights of creditors generally;

(d)   the Borrower is not in default under the terms of any indebtedness of the Borrower and the Borrower is not aware, nor has it been notified by the holder of any indebtedness, that grounds for default exist with respect to any indebtedness of the Borrower;

(e)   the execution and delivery of the Loan Documents by the Borrower and the consummation by the Borrower of the transactions contemplated thereby (i) are not in violation or breach of, do not conflict with or constitute a default under any of the terms of the charter documents or bylaws of the Borrower; (ii) will not result in a violation under any law, judgment, decree, order, rule, regulation or other legal requirement or of any governmental authority, court or arbitration tribunal whether federal, state, municipal or local at law or in equity, and applicable to the Borrower; and (iii) will not violate or constitute a breach of or constitute a default under any indebtedness of the Borrower or any subsidiary or affiliate of the Borrower;

(f)   No Event of Default, as hereinafter defined, has occurred under this Agreement and no default has occurred under any of the other Loan Documents;

(g)   The Borrower makes no claim that the terms of the Note, including without limitation the interest rate thereon, nor anything contained herein is usurious nor that there exists any

2

offset, deduction or defense with respect to the Borrower's obligations under the Loan Documents;

(h)  There are no outstanding judgments against the Borrower which have not been paid; and

(i)  There are no impediments to the full and complete performance by the Borrower hereunder or under any of the Loan Documents.

Section 2.02  <u>Certain Covenants</u>.  The Borrower covenants and agrees that so long as this Agreement shall remain in effect or any principal of or interest on said Loan shall be unpaid Borrower shall:

(a)  Pay all sums due and owing under the Note pursuant to its terms;

(b)  Do or cause to be done all things necessary to preserve and keep in full force and effect its existence under the laws of its jurisdiction of incorporation;

(c)  Give prompt notice to the Lender of (i) any proceedings of which the Borrower has notice instituted by or against the Borrower, and (ii) any other action, event or condition of any nature which the management of the Borrower reasonably believes could have, lead to or result in a material adverse effect upon the business, assets or financial condition of the Borrower.

(d)  Cause all property used or useful in the conduct of its business or the business of any subsidiary to be maintained and kept in good condition, repair and working order (subject to normal wear and tear) and supplied with all necessary equipment and will cause to be made all necessary repairs, renewals, replacements, betterments and improvements thereof, all as in the judgment of the Borrower may be necessary so that the business carried on in connection therewith may be properly and advantageously conducted at all times;

(e)  Provide the Lender on or before the 10th day of each month Borrower's financial statements certified by an officer of Borrower and providing such other information, including interim financial statements, concerning the Borrower's business, affairs and financial condition as the Lender may from time to time request;

(f)  Pay or discharge or cause to be paid or discharged, before the same shall become delinquent (i) all taxes,

3

assessments and governmental charges levied or imposed upon the Borrower or any subsidiary upon the income, profits or property of the Borrower or any subsidiary, and (ii) all lawful claims for labor, materials and supplies which, if unpaid, might by law become a lien upon the property of the Borrower or any subsidiary; provided, however, that the Borrower shall not be required to pay or discharge or cause to be paid or discharged any such tax, assessment, charge or claim which amount, applicability or validity is being contested in good faith by appropriate proceedings and for which adequate reserves have been maintained by the Borrower; and

(g)  Pay all sums that may be necessary to be paid in order to enforce the Note and to enforce and/or to record any agreement or any other documentation executed and delivered in connection with the Note, including but not limited to, this Agreement, whether such sums be in the nature of recording fees, mortgage tax or any other expense in connection with such recording.

Section 2.03  <u>Negative Covenants</u>.  The Borrower pledges, covenants and agrees that so long as this Agreement shall remain in effect or the principal of or interest on the Loan shall remain unpaid it shall not, without the prior written consent of the Lender, Borrower shall not do any of the following:

(a)  Declare or pay any cash dividends on, or make any distribution to the holders of, any shares of capital stock of the Borrower, other than dividends or distributions payable in such capital stock, and neither the Borrower nor any subsidiary will purchase, redeem or otherwise acquire or retire for value any shares of capital stock of the Borrower or warrants or rights to acquire such capital stock;

(b)  Insist upon, plead, or in any manner whatsoever claim or take the benefit or advantage of, any stay, extension or usury law wherever enacted, now or at any time hereinafter in force, which may affect the covenants or the performance by Borrower of its obligations under any of the Loan Documents; and the Borrower hereby expressly waives all benefit or advantage of any such law, and covenants that it will not, by resort to any such law, hinder, delay or impede the execution of any power herein granted to the Lender but will suffer and permit the execution of every such power as though no such law had been enacted;

(c)  Adopt any plan of liquidation which provides for, contemplates or the effectuation of which is preceded by (i) the sale, lease, conveyance or other disposition of all or substantially all of the assets of the Borrower or any subsidiary

4

and (ii) the distribution of all or substantially all the proceeds of such sale, lease, conveyance or other disposition and the remaining assets of the Borrower to the holders of capital stock of the Borrower, unless the Borrower shall in connection with the adoption of such plan make provision for, or agree that prior to making any liquidating distributions it will make provision for, the satisfaction of all of the Borrower's obligations under the Loan documents;

(d)  Incur, create or assume any indebtedness except indebtedness ("Senior Debt") to the Borrower's current factor provided the principal amount of the Borrower's Senior Debt does not exceed the amount shown therefor on the Borrower's audited financial statements for the year ended June 30, 1998;

(e)  Mortgage, pledge, grant or permit to exist any lien or other security interest in any of its assets, of any kind, now owned or hereafter acquired, nor hypothecate or grant a lien or security interest in its capital, net worth, equity accounts or any capital stock, as the case may be, except for the security interest held by the Borrower's factor, provided such Senior Debt does not the amount shown therefor on the Borrower's audited financial statements for the year ended June 30, 1998; and

(f)  Directly or indirectly, pay any funds to or for the account or benefit of, or enter into or permit to exist any transaction, including, without limitation, the purchase, sale, lease or exchange of any property or assets or securities or any loan transaction or the rendering of any service, with any Affiliate, as hereinafter defined, unless such transaction is for fair value to the Borrower or its subsidiaries and on terms and conditions not less favorable to the Borrower or such subsidiaries than could be obtained on an arms length basis from unrelated third parties, as determined in each case by the Board of Directors of the Borrower (as evidenced by resolutions duly adopted by the Board); provided, however, that the provisions of this Section 2.03(f) shall not apply to (i) reasonable compensation for services in connection with employment or services as a director, or (b) payments to Affiliates of the Borrower in respect of contracts or transactions in existence on the date hereof which are described or referred to in the Borrowers periodic reports as filed with the securities and Exchange Commission.  For purposes of this Section 2.03(f) the term "Affiliate" shall have the meaning ascribed thereto in Rule 405 under the Securities Act of 1933, as amended.

Article III

Borrower shall have the right, without payment of any premium or penalty, to make total or partial prepayments on the Note on the last day of any month, provided Borrower has given Lender not less than one month's prior written notice of its intention so to do.

Article IV
Collateral and Guaranty

Section 4.01   Collateral.

(a)   Borrower shall execute and deliver a Security Agreement (the "Security Agreement") granting Lender a security interest in all of Borrower's present and future tangible and intangible assets, whether now owned or hereafter acquired.

(b)   In addition, the Borrower shall execute and deliver one or more UCC-1 Financing Statements pertaining to the security interest created by the Security Agreement.

Section 4.02   Guaranty and Subordination.   As additional security for the repayment of the Loan, Edward T. Stein, the chairman and a principal stockholder of the Borrower, shall (i) guaranty (the "Guaranty") the repayment of the Loan and shall secure such Guaranty by granting the Lender a first lien and security interest in 1,000,000 shares (the "Shares") of the common stock of Borrower, which Shares will be freely transferable under all applicable federal and state securities laws and (ii) deliver to Lender an agreement to subordinate (the "Subordination Agreement") any loans he may have made to the Borrower to the Loan.   In addition, Stein shall deliver to Lender a consent (the "Consent") to such lien by all record owners of the shares.

Article V
Fees

Section 5.01   Commitment Fee.   Simultaneously herewith Borrower shall pay to Lender, as an offset against the disbursement of the proceeds (the "Loan Proceeds") of the Loan, a loan commitment fee in the amount of $25,000.

Section 5.02   Commission.   Simultaneously herewith Borrower shall pay to InterBank Capital Group, LLC, as an offset against

the disbursement of the Loan Proceeds, a commission in the amount of $25,000.

Section 5.03 <u>Exit Fee</u>.  On the Due Date Borrower shall pay Lender, in addition to the entire unpaid principal balance of the Loan and accrued and unpaid interest thereon, in immediately available funds an exit fee of $16,500.

Article VI
Default

Section 6.01  <u>Event of Default</u>.  Each of the following shall constitute an "Event of Default" under this Agreement:

(a)   If any representation or warranty made in connection with this Agreement shall prove to be incorrect in any material respect;

(b)   The failure to make any payment of principal or interest under the Note on or before the due date thereof;

(c)   A default in respect of any liabilities or obligations (present or future, absolute or contingent, secure or unsecured, matured or unmatured, joint or several, original or acquired) of the Borrower, or any of its affiliates, to the Lender, or any of its affiliates, after the expiration of any  applicable grace, notice or cure period, including but not limited to any default under the Guaranty;

(d)   The Borrower or any of its subsidiaries fail to pay when due or within any applicable grace period any principal or interest on any indebtedness or shall be in breach or default with respect to any indebtedness or other debt of the Borrower, if the effect of such failure to pay, default or breach is to cause the holder or holders (or a trustee on behalf of such holder or holders) to accelerate such indebtedness of the Borrower;

(e)   The admission (whether in writing or otherwise) by Borrower of its inability to pay its debts generally as they become due;

(f)   The commencement by the Borrower of a voluntary case (or other proceeding) under the Federal Bankruptcy Code, as now constituted or hereafter amended, or under any other applicable foreign or state bankruptcy, insolvency or other similar law; or the continued existence for more than (30) days in respect of the

7

shall be repaid by the Borrower upon demand, together with interest thereon at the default rate under the Note.

Section 6.03  <u>No Waiver</u>. (a) Any failure of the Lender to exercise its option to declare the Loan immediately due and payable, or any forbearance by the Lender before or after any exercise of such option, or any forbearance to exercise any other remedy of the Lender, or any withdrawals or abandonment of the Lender of any of its rights in any one circumstance, shall not be construed as a waiver of any option, power, remedy or right of the Lender hereunder except to the extent, if any, the action of the Lender constitutes an express waiver with respect to such one circumstance.  The rights and remedies of the Lender expressed and contained in this Agreement and in the other Loan Documents are cumulative, and none of them shall be deemed to be exclusive of any other or of any right or remedy the Lender may now or hereafter have in law or in equity.  The election of any one or more remedies shall not be deemed to be an election of remedies under any statute, rule, regulation or other law.

(b)  The obligations of the Borrower (and the rights and remedies of the Lender against the Borrower) hereunder shall in no way be modified, abrogated, terminated or adversely affected by (i) any forbearance by the Lender in collecting any sums due, or (ii) the granting of any extension of time to perform any obligation hereunder or (iii) any impairment of the collateral, if any, which may now or hereafter be assigned or delivered to Lender to secure payment of the Loan, by reason of any act, failure to act or negligence of the Lender.

Article VII
Conditions Precedent

Section 7.01.  The obligation of the Lender to enter into this Agreement and to make the Loan is subject to the condition precedent that the Lender shall have received on or before the date (the "Closing Date") of the disbursement of the Loan Proceeds each of the following documents, in form and substance satisfactory to the Lender and its counsel, and each of the following requirements shall have been fulfilled:

(a)  The Note and each of the other Loan Documents (including but not limited to appropriate Forms UCC-1) duly executed by the Borrower;

(b)  The Subordination Agreement and the Guaranty duly executed by Edward T. Stein ("Stein") and physical delivery of the Shares constituting the collateral contemplated thereby;

9

(c)   Certified copies, dated the Closing Date, of the Certificate of Incorporation and By-Laws of the Borrower and all amendments thereto;

(d)   Certified copies, dated the Closing Date, of all corporate action taken by the Borrower, including resolutions of its Board of Directors, authorizing the execution, delivery, and performance of the Loan Documents and each document to be delivered pursuant to this Agreement;

(e)   A certificate, dated the Closing Date, of the Secretary of the Borrower, certifying the names and true signatures of the officers of the Borrower authorized to sign the Loan Documents and the other documents to be delivered pursuant to this Agreement;

(f)   A certificate, dated within ten (10) days of the Closing Date, from the Secretary of State (or other appropriate official) of the jurisdiction of incorporation of the Borrower certifying as to the due incorporation and good standing of the Borrower, and certificates, dated within five (5) days of the Closing Date, from the Secretary of State (or other appropriate official) of each other jurisdiction where the Borrower is required to be qualified to conduct business, certifying that the Borrower is duly qualified to do such business and is in good standing in such jurisdiction;

(g)   A favorable opinion of counsel for the Borrower in a form reasonably satisfactory to the Lender;

(h)   Payment in full of the Commitment Fee and Commission described in Article V;

(i)   Payment of all expenses actually incurred by Lender in connection with the transactions contemplated hereby upon presentation of an invoice therefor;

(j)   Coleman & Rhine LLP shall have been paid in full for all legal fees (in an amount not to exceed $7,500), costs and expenses actually incurred in connection with the preparation of the Loan Documents;

(k)   A certificate signed by Stein in his capacity as sole general partner of the record owner of the Shares;

(l)   A certificate of the Borrower signed on behalf of the Borrower by its Chief Executive Officer, dated the Closing Date, to the effect that the representations and warranties of the

10

Borrower in the Loan Documents are true and correct, as if made on and as of the Closing Date, and the Borrower has complied with all agreements and covenants and satisfied all conditions contained in the Loan documents on its part to be performed or satisfied at or prior to the Closing Date; and

(k) Lender shall have received such other approvals or documents as Lender may reasonably request.

Article VIII
Miscellaneous

Section 8.01  <u>Notices</u>.  All notices to be given hereunder shall be delivered by hand, or sent to the party to be notified via certified mail, return receipt requested or sent by recognized overnight courier which provided evidence of receipt and shall be deemed given when delivered by hand or one (1) day after delivery to such recognized overnight courier or three (3) days after being posted with the United States Postal Service addressed to the parties as follows:

        If to the Borrower:  Detour Magazine, Inc.
                             6855 Santa Monica Boulevard
                             Los Angeles, California 90038
                             c/o Edward T. Stein

        If to the Lender at: IBF Special Purpose Corporation III
                             1733 Connecticut Avenue
                             Washington, DC 20009

Section 8.02  <u>Successors and Assigns</u>.  The terms Borrower and Lender shall include the named Borrower and the named Lender and their respective legal representatives, successors and assigns.

Section 8.03  <u>Severability</u>.  If any one or more of the provisions contained in this Agreement or in any of the other Loan Documents shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision of this Agreement or any other of the other Loan Documents, and in lieu of such invalid, illegal or unenforceable provision there shall be added automatically as a part of this Agreement a provision as similar to such invalid, illegal or unenforceable provision as may be possible and be valid, legal and enforceable.

11

Section 8.04  <u>Indemnity</u>.  The Borrower shall indemnify and hold harmless the Lender from and against any and all liabilities, obligations, losses, damages, penalties, claims, actions, suits, proceedings, judgments, costs, expenses, and disbursements, including but not limited to, counsel fees, in any way relating to or arising out of the failure of the Borrower to perform in full its obligations under this Agreement or under any of the other Loan Documents.

Section 8.05  <u>Applicable Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the District of Columbia without regard to conflict of laws or principles.

Section 8.06  <u>Jurisdiction</u>.  ANY ACTION OR PROCEEDING IN CONNECTION WITH THIS AGREEMENT MAY BE BROUGHT IN A COURT OF RECORD OF THE DISTRICT OF COLUMBIA, THE PARTIES HEREBY CONSENTING TO THE JURISDICTION THEREOF.

Section 8.07  <u>Waiver of Certain Defenses</u>.  IN ANY ACTION OR PROCEEDING IN CONNECTION WITH THIS AGREEMENT, OR ANY OTHER LOAN DOCUMENT, THE BORROWER WAIVES ANY CLAIM THAT THE DISTRICT OF COLUMBIA IS AN INCONVENIENT FORUM AND FURTHER WAIVES THE RIGHT TO INTERPOSE ANY DEFENSE BASED UPON ANY STATUTE OF LIMITATIONS OR ANY CLAIM OF LACHES AND ANY SET-OFF OR COUNTERCLAIM OF ANY NATURE OR DESCRIPTION EXCEPT FOR ANY COUNTERCLAIMS DEEMED COMPULSORY UNDER APPLICABLE COURT RULES OR STATES.

Section 8.08  <u>Waiver of Jury Trial and Waiver of Certain Damages</u>.  IN ANY ACTION OR PROCEEDING IN CONNECTION WITH THIS AGREEMENT OR ANY OTHER LOAN DOCUMENT, THE LENDER AND BORROWER MUTUALLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, TRIAL BY JURY AND BORROWER HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY CLAIM FOR CONSEQUENTIAL, PUNITIVE OR SPECIAL DAMAGES.

Section 8.09  <u>Joint and Several Liability</u>.  If this Agreement is executed by more than one person or entity, all representations, warranties, obligations and covenants made by the Borrower hereunder shall be deemed to have been made by each of such persons and entities and the obligations and duties of such parties hereunder shall be deemed to be joint and several in all respects.

Section 8.10  <u>Counterparts</u>.  This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, but all of which, when taken together, shall constitute one and the same instrument and shall become effective when copies hereof, when taken together, bear the signatures of

each of the parties hereto and it shall not be necessary in
making proof of this instrument to produce or account for more
than one of such fully executed counterparts.

13

IN WITNESS WHEREOF, this Agreement has been duly executed by the Borrower and Lender as of the day and year first above written.

BORROWER:

DETOUR MAGAZINE, INC.

By: *Edward C Stern*
Name:_____
Title:_____


LENDER:

IBF SPECIAL PURPOSE
CORPORATION II

By: _____
Name:_____
Title:_____

8/12/98

## PROMISSORY NOTE

$550,000.00                Washington, DC.

August *20* 1998

FOR VALUE RECEIVED, DETOUR MAGAZINE, INC. ("Maker"), promises to pay to the order of IBF SPECIAL PURPOSE CORPORATION II ("Payee"), a Delaware Corporation, at 1733 Connecticut Avenue, NW, Washington D.C. 20009, or such other place as the holder hereof may from time to time designate in writing, the sum of FIVE HUNDRED FIFTY THOUSAND AND NO/100 DOLLARS ($550,000), in lawful money of the United States, with interest on the amount from time to time outstanding at the rate of eighteen per cent (18.00%) per annum, payable as hereinafter stipulated.

INTEREST ONLY on this Note shall be due and payable monthly in advance on the unpaid balance of principal, the first such monthly interest installment, representing interest from the date hereof through and including August 31, 1998, due and payable on the date hereof, and one monthly interest installment due and payable on the first day of each succeeding month thereafter until November *20*, 1998 (the "Due Date"), when the entire balance of principal, together with all accrued unpaid interest thereon, shall be due and payable.

Upon not less than one month's prior written notice of its intent to do so, Maker shall have the privilege of prepaying all or any part of this Note on the last day of any month without penalty.

The principal of this Note after maturity and all past due interest shall bear interest until paid at that rate that shall be ten per cent (10%) per annum in excess of the rate above stated, or the maximum permissible by law, whichever is the lesser.

Default in the payment of any part of the principal or interest, when due, or failure to comply with any of the agreements and conditions in the Loan Agreement of even date pursuant to which this Note is issued or in the instrument given to secure this Note shall, at the option of the holder hereof, mature the whole of this Note, upon notice to Maker.

In the event this Note is placed into the hands of an attorney for collection, or if collected through Probate or Bankruptcy proceedings, then an additional ten per cent (10%) on the amount of principal and interest then owing hereon, shall be added to the same as attorneys' fees.

To the extent permitted by law, the makers and all endorsers, sureties and guarantors of this Note hereby severally

waive notice of intention to accelerate, notice of acceleration, presentment for payment, notice of nonpayment, protest and diligence in bringing suit, against any party hereto, and consent to any renewal, extension, or rearrangement, or other indulgence with respect to this Note at any time without notice to any of them.

It is the intent of Maker and Payee in the making of the Loan to contract in strict compliance with applicable usury law. In furtherance thereof Maker and Payee stipulate and agree that none of the terms and provisions contained herein, or in any instrument executed in connection herewith, shall ever be construed to create a contract to pay for the use, forbearance or detention of money or to pay interest at a rate in excess of the maximum interest rate permitted to be charged by applicable law. Neither the Maker nor any guarantors, endorsers or other parties now or thereafter becoming liable for payment of the Loan shall ever be required to pay interest thereon at a rate in excess of the maximum interest that may be lawfully charged under applicable law, and the provisions of this Note or any other instruments now or hereafter executed in connection herewith which may be in apparent conflict herewith shall be deemed inoperative.  If the maturity of the Loan shall be accelerated for any reason or if the principal of the Loan is paid prior to the end of the term thereof, and as a result thereof the interest received for the actual period of existence of the Loan exceeds the applicable maximum lawful rate, the holder of the Loan shall refund to Maker the amount of such excess or shall credit the amount of such excess against the principal balance of the Loan then outstanding.  In the event that Payee or any other holder of the Loan shall collect monies which are deemed to constitute interest in an amount sufficient to increase the effective interest rate on the Loan to a rate in excess of that permitted to be charged by applicable law, all sums deemed to constitute interest in excess of the lawful rate shall, upon such determination, at the option of the Payee, be immediately returned to the Maker or credited against the principal balance of the Loan then outstanding.  The term "applicable law" as used herein shall mean the laws of the district of Columbia or the laws of the United States, whichever laws allow the greater rate of interest, as such laws now exist or may be changed or amended or come into effect in the future.

This Note has been issued pursuant to a Loan Agreement of even date herewith between Maker and Payee, to which reference is made for all purposes.  Payee is entitled to the benefits of the security provided for in the Loan Agreement, including a security interest in the assets of Maker created by a Security Agreement of even date herewith.

IN WITNESS WHEREOF, Maker has caused this Note to be signed by the undersigned, thereunto duly authorized, and to be dated the day and year first above written.

DETOUR MAGAZINE, INC.

By: _Edward G. Stein_
    Name:
    Title:

GUARANTY given by Edward T. Stein, with an address at 201 N. Service Road, Suite 100, Melville, New York 11747 ("Guarantor"), to induce IBF Special Purpose Corporation II ., having its main office at 1733 Connecticut Avenue, N.W., Washington, D.C. 20009 ("Lender"), to make a loan to or for the account of Detour agazine, Inc. (the "Borrower").

In consideration of the foregoing Guarantor agrees:

1.   **Obligation of Guarantor.**   Guarantor hereby irrevocably guarantees the prompt payment to Lender, its successors, subsidiaries, correspondents, and assigns, at maturity of every obligation and liability (the "Loan Obligations") of Borrower to Lender which may hereafter accrue, whether originally contracted with or otherwise acquired by Lender, and, in the case of promissory notes and other commercial paper discounted with Lender, whether or not indorsed without recourse.

2.   **Collateral.**   As collateral security for Guarantor's obligation hereunder, Guarantor grants to Lender a security interest in collateral consisting of 1,000,000 shares (the "Shares") of the common stock of Borrower, a stock certificate representing which Shares, together with a stock power endorsed in blank, is being deposited with Lender simultaneously with the execution of this Guaranty, and all other property of Guarantor of like kinds or types previously, presently, or in the future deposited with Lender, and the proceeds of the collateral.   If at any time Lender considers the collateral security held by it hereunder to be unsatisfactory or insufficient, Guarantor shall on demand furnish further satisfactory security to Lender.

3.   **Realization on Security.**   If Guarantor fails to furnish additional security as required in paragraph 2, or if any event of default enumerated in paragraph 7 occurs, Lender may, in addition to its rights and remedies under the Uniform Commercial Code as in force in the District of Columbia on the date hereof, forthwith appropriate, collect, and realize upon any or all property held by it as collateral hereunder, and may sell, deliver, or make any agreement in respect of such property.   The property may be sold at public or private sale, at the prices and terms Lender deems best, and Lender shall have the right to purchase all or any part of the property.   Lender may apply the proceeds of any sale or other transaction, in its proper order of priority, to the payment, in any order Lender elects, of any one or more of its claims against Borrower or Guarantor.

4.   **Character of Obligation.**   This guaranty is an absolute, continuing, and unlimited guaranty of payment, and not of collection, without regard to the regularity, validity, or enforceability of any liability or obligation of Borrower.

(b)   Except for the security interest created by this Guaranty, the Shares are (i) free and clear of all security interests, liens and encumbrances and (ii) freely transferable under applicable federal and state securities laws.

(c)   Guarantor has the full power and authority to enter into this Guaranty and to pledge the Shares.  Entering into this Guaranty does not violate any material provision of any contract, license or agreement to which Guarantor is a party.

10.   **Binding Effect.**  This agreement shall inure to the benefit of Lender, its successors, subsidiaries, correspondents, and assigns, shall apply to Borrower, and any successors or assigns, and shall be binding upon Guarantor, its legal representatives, successors, and assigns.

11.   **Addresses for Notices.** All notices and other communications provided for hereunder shall be in writing (including telegraphic and telecopied communication) and mailed, telegraphed, telecopied, or delivered to respective party at the address set forth on the first page of this guaranty; or as to either party at such other address as shall be designated by such party in a written notice to each other party complying as to delivery with the terms of this Section.  All such notices and other communications shall, when mailed, telegraphed, telecopied, or delivered, respectively, be effective when deposited in the mails, telecopied, delivered to the telegraph company or delivered, respectively, addressed as aforesaid.

12.   **Assignment.**  The Lender may upon notice to Guarantor assign or otherwise transfer the Loan Obligations held by it to any other person, and such other person shall thereupon become vested with all the benefits in respect thereof granted to the Lender herein or otherwise; provided, however, failure of the Lender to deliver notice of assignment in no way limits the obligations of the Guarantor under this Guaranty.

13.   **Severability of Provisions.**  Any provision of this Guaranty which is prohibited or unenforceable in any jurisdiction, shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof or affecting the validity or enforceability of such provision in any other jurisdiction.

14.   **Headings.**  Section headings in this Guaranty are included for convenience of reference only and shall not

3

In witness whereof the parties have duly executed and delivered this guaranty as of August 26, 1998.

_____
Edward T. Stein

IBF SPECIAL PURPOSE CORPORATION II

By: _____
    Name:
    Office:



**InterBank**
F U N D I N G

JAN 4

December 28,1998

**VIA FACSIMILE AND U.S. MAIL**

Mr. Edward Stein
Time Capital
201 North Service Road
Melville, NY 11747

Re: Loan #298-09, Detour Magazine

Dear Ed:

The above referenced loan in the principal amount of $550,000 matured on November 20, 1998. We have previously written you regarding the maturity of the loan and the terms under which we would consider granting an extension of the loan. In order for us to consider a loan extension, the following conditions must be met:

1. <u>Extension Fee:</u> An extension fee in the amount of $5,500 must be paid with the extension request.
2. <u>Principal Curtailment:</u> A principal curtailment of the outstanding loan balance in the amount of 5% or $27,500 must be made.
3. <u>Term:</u> The extension of the loan will be for the period ending March 31, 1999.

All other terms and conditions remain the same, in accordance with the loan documents.

In order for this extension request to be considered, the loan cannot be in default. The past due balance of $8,525.00 must be paid immediately to bring the loan current. All future payments must be made by the first of each month.

If you are in agreement with these terms and conditions, please sign in the space provided below. This agreement, including all payments, must be received in our office by Thursday, December 31, 1998 at 12:00.

IBF SPECIAL PURPOSE CORPORATION II
1733 CONNECTICUT AVENUE, N.W., WASHINGTON, DC 20009  TEL. 202.588.7500  800.588.7006  FAX. 202.588.5088

Mr. Edward Stein
December 28,1998
Page two

Nothing in this letter should be considered a commitment to loan funds. All credit extensions are subject to review and approval of the loan committee, which currently has no extension proposal before it.

Please call me regarding this information. Thank you for your prompt attention to this matter.

Sincerely,

Simon A. Hershon
President

Edward Stein